IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| LAZARA RODRIGUEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:10-CV-23718-WKW [WO] |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Respondent. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Petitioner Lazara Rodriguez's ("Ms. Rodriguez") Motion to Vacate Judgment and Sentence Pursuant to 28 U.S.C. § 2255, or in the Alternative, [Petition] for Writ of Error Coram Nobis And/Or Audita Quarela Pursuant to 28 U.S.C. § 1651.[1]  (Doc. # 1.)  Ms. Rodriguez seeks to challenge the constitutionality of her conviction more than twenty-five years subsequent to entering a guilty plea in the United Stated District Court for the Southern District of Florida.  The Motion is due to be denied.

---

[1]  The United States District Judge who sentenced Ms. Rodriguez is no longer a United States District Judge.  *See* 28 U.S.C. § 2255(a).  Furthermore, all of the judges of the Southern District of Florida have recused themselves.  As a result, the case was assigned to the undersigned.

# I.  BACKGROUND

Taking as true Ms. Rodriguez's factual allegations, the court finds the following facts:

On December 28, 1984, Ms. Rodriguez, a citizen of Cuba and resident alien of the United States, entered a guilty plea to one count (Count II of the Indictment) of racketeering conspiracy, 18 U.S.C. §§ 1962(c) and 2.  The pattern of racketeering activity was alleged to be a sizeable marijuana distribution enterprise, but Ms. Rodriguez only admitted to and was adjudged guilty of two predicate crimes of obstruction of justice (18 U.S.C. §§ 1503 and 2) and one predicate crime of bribery (18 U.S.C. §§ 201 and 2) relating to the alleged preparation of false affidavits to be submitted to the grand jury and to the bribery of a grand jury witness.[2]  (Indictment (Doc. # 19, Ex. 2); Plea Agreement ¶ 1 (Doc. # 19, Ex. 4); Plea Colloquy Tr. 22 (Doc. # 19, Ex. 5) ("I want the record to reflect as it does in the written plea agreement, my client is only admitting three predicate acts . . . , which relate to two obstruction[ ] of justice counts . . . and also the bribery count . . . .").)  In connection with the plea agreement, the Government dismissed at sentencing all other counts against Ms. Rodriguez in the Indictment, including numerous charges for narcotics importation and possession with intent to distribute marijuana.  (Plea Agreement ¶ 2.)

---

[2]  The Indictment erroneously listed the bribery offense as 21 U.S.C. § 201.

Ms. Rodriguez alleges in her pleading, and the record adequately reflects, that her primary concern, which she addressed to her defense attorney, Federico A. Moreno,[3] was being deported back to Cuba.  (Pet'r.'s Br. 5 (Doc. # 1) ("[Ms. Rodriguez] specifically advised her attorney that her main concern was what consequences she might suffer with immigration."); 3/27/1985 Mot. for Court Ordered Recommendation of Non-Deportation ¶ 3 (Doc. # 19, Ex. 7) ("[Ms. Rodriguez] suffers a likelihood of persecution by the Cuban Government were she to be deported."); Plea Colloquy Tr. 32 ("Certainly [Ms. Rodriguez] [is] not going to go back to Cuba and that's what she doesn't want to do and that's what my concern is.").)

Based on Ms. Rodriguez's professed desire to avoid deportation, she alleges that Mr. Moreno "told her that he **was not** going to choose the charge that would provide for the lowest sentence[;] rather he would choose the charge that was not a drug offense so that [Ms. Rodriguez] would be protected from deportation." (Pet'r.'s Br. 5) (emphasis in original).  The problem was that *all* of the charges against Ms. Rodriguez were deportable offenses "upon order of the Attorney General," as either "crimes involving moral turpitude" or "violation[s] of . . . any law . . . relating to the

---

[3]  Mr. Moreno is now Chief United States District Judge Moreno for the Southern District of Florida.

illict possession of or traffic in [or importation of] narcotic drugs or marihuana . . . ." 8 U.S.C. § 1251(a)(4) (moral turpitude) and (a)(11) (narcotics) (1982).

Despite all of the charges being deportable offenses, the statutory scheme then in effect offered a potential exemption for those convicted of moral turpitude offenses. Section 1251(b) read: "The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply . . . (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported . . . ." 8 U.S.C. § 1251(b)(2) (1982). Such a recommendation was known as a judicial recommendation against deportation ("JRAD").[4] Although nominally a "recommendation," a JRAD "had the effect of binding the Executive to prevent deportation" because the statute was "'consistently . . . interpreted as giving the sentencing judge conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation.'" *Padilla*, 130 S. Ct. at 1479 (quoting *Janvier v. United States*, 793 F.2d 449, 452 (2d Cir. 1986)). However, the JRAD procedure applied only to the provisions of subsection (a)(4), convictions for

---

[4] The JRAD procedure has since been eliminated by Congress from the statutory scheme. *See* 104 Stat. 5050; *see also Padilla v. Kentucky*, 130 S. Ct. 1473, 1480 (2010).

moral turpitude crimes.  *See Padilla*, 130 S. Ct. at 1480 n.5.  The statute explicitly stated that no like procedure was available for narcotics convictions.[5]  8 U.S.C. § 1251(b) (1982) ("The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a)(11) of this section.").

Because the JRAD procedure was available for crimes involving moral turpitude, Mr. Moreno negotiated a plea agreement with the Government whereby Ms. Rodriguez would plead guilty only to the racketeering offense and admit only the obstruction of justice and bribery predicate crimes.  In this fashion, Mr. Moreno might have obtained a JRAD through 8 U.S.C. § 1251(b) for Ms. Rodriguez on the racketeering offense, thereby avoiding the restrictive deportation procedures for narcotics convictions.

Ms. Rodriguez was sentenced on March 27, 1985, to a prison term of 84 months.  (Judgment (Doc. # 19, Ex. 6).)  On the same day, Mr. Moreno filed the

---

[5]  An alien convicted of an offense falling under 8 U.S.C. § 1251(a)(11) could have applied, in limited circumstances not present in Ms. Rodriguez's case, to the Attorney General for a deportation waiver.  *See* 8 U.S.C. § 1251(f)(1)(B)(2) (1982) (waiver from Attorney General available for a conviction of simple possession of 30 grams or less of marijuana); *see also* 8 U.S.C. § 1182(c) (1982) (discretionary waiver from Attorney General was available for any permanent resident alien with "a lawful unrelinquished domicile of seven consecutive years"); *INS v. St. Cyr*, 533 U.S. 289, 294-96 (2001) (discussing the applicability of § 1182(c) to deportation proceedings); *Padilla*, 130 S. Ct. at 1480.

JRAD motion.[6]   Unfortunately for Ms. Rodriguez, the motion was cursorily and swiftly denied by former United States District Judge Alcee Hastings, who allegedly "comment[ed] that he was not an immigration judge."  (Order Denying JRAD (Doc. # 19, Ex. 8); Pet'r.'s Br. 6.)  Mr. Moreno persisted and, on May 16, 1985, filed a second Motion for Modification of Sentence and Recommendation Against Deportation.  (Doc. # 19, Ex. 9.)  That motion was denied on July 1, 1985.  (Doc. # 19, Ex. 1.)

Ms. Rodriguez's sentence expired in 1989.  The Attorney General commenced deportation proceedings soon thereafter, and, in 1992, Ms. Rodriguez was ordered deported by an oral decision of an Immigration Judge in the Executive Office for Immigration Review in Miami, Florida.  (Doc. # 19, Ex. 10.)  Under order of supervision, Ms. Rodriguez, as a Cuban citizen, has remained in the United States since that date, but is subject to rigid travel restrictions and reporting requirements. (Doc. # 27, Ex. A.)  The order of deportation remains in effect, and Ms. Rodriguez could be deported at any time.

In 2010, Ms. Rodriguez filed the instant petition.  She maintains that her Sixth Amendment guarantee of effective assistance of counsel was denied when Mr.

---

[6] Although Ms. Rodriguez's brief states that the motion was filed in early June of 1985, the motion as produced by the Government (Doc. # 19, Ex. 7) reveals that it was actually filed on March 27, 1985, the same day as sentencing.

Moreno "provided inaccurate advice to [her] in regards to the absolute deportation consequences of her plea." (Pet'r.'s Br. 11.)  Ms. Rodriguez argues that, had she been advised accurately of the deportation consequences, "she would not have entered into the plea bargain."  (Pet'r.'s Br. 11.)  She seeks an order vacating the judgment and conviction.

## II.  STANDARDS OF REVIEW

### A.    The 28 U.S.C. § 2255 Motion

Under 28 U.S.C. § 2255, a prisoner in federal custody "under sentence of a [federal] court" may challenge her incarceration on four separate grounds:  (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See Hill v. United States*, 368 U.S. 424, 426-27 (1962).  "In a [§] 2255 motion, a petitioner has the burden of sustaining [her] contentions by a preponderance of the evidence."  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).[7]

A court may dismiss a § 2255 motion if "it plainly appears from the motion,

---

[7]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) – Section 2255 Proceedings. However, if the motion is not dismissed, the court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 8(a) – Section 2255 Proceedings. The district court should hold an evidentiary hearing and rule on the merits of a petitioner's claim where she "alleges facts that, if true, would entitle [her] to relief." *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (internal quotation marks omitted). Stated another way, the district court must accord a § 2255 petitioner an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991) (citing 28 U.S.C. § 2255) (internal quotation marks omitted).

**B.    *Coram Nobis* Petition**

A federal court may issue a writ of error *coram nobis* pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). "A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody . . . ." *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). "[C]oram nobis relief is available

after [the] sentence has been served because 'the results of the conviction may persist[,] [s]ubsequent convictions may carry heavier penalties, [or] civil rights may be affected.'" *Id.* (quoting *United States v. Morgan*, 346 U.S. 503, 512-13 (1954)). However, the Eleventh Circuit recently enshrined the finality of convictions as "critically important" to our criminal justice system. *Gilbert v. United States*, 640 F.3d 1293, 1309 (11th Cir. 2011) (*en banc*) (Carnes, J.).

Thus, a writ of error *coram nobis* is "an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *Mills*, 221 F.3d at 1203. The writ may be invoked "to correct errors 'of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid.'" *Peter*, 310 F.3d at 712 (quoting *Morgan*, 346 U.S. at 509, n.15).

Because the writ functions as "an assurance that deserved relief will not be denied as a result of the technical limitations of other post-conviction remedies[,]" *Peter*, 310 F.3d at 712, there are fewer procedural hurdles barring consideration of the *coram nobis* petition on its merits. For example, "'the time for filing a petition [for a writ of error *coram nobis*] is not subject to a specific statute of limitations.'" *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996) (quoting *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994)). This does not, however, suggest that a petition for a writ of error *coram nobis* is never untimely. Rather, this case-specific

9

timeliness inquiry demands that "the petitioner present[ ] sound reasons for failing to seek relief earlier." *Mills*, 221 F.3d at 1204 (citing *Morgan*, 346 U.S. at 512).  If no sound reason is produced, then the petition may be denied as untimely.  Furthermore, as a writ of last resort, *coram nobis* is available only when other post-conviction statutory remedies are not.  *United States v. Brown*, 117 F.3d 471, 474-75 (11th Cir. 1997).

## III.  DISCUSSION

### A.  <u>The § 2255 Motion</u>

#### 1.   *Custody*

The threshold issue is whether Ms. Rodriguez is in custody for purposes of § 2255.  The Government argues that "the provisions of 28 U.S.C. § 2255 do not apply to [Ms. Rodriguez] since she is not currently in custody of the United States." (Resp't.'s Br. 5.)  Pursuant to 28 U.S.C. § 2255, "[a] prisoner in *custody under sentence of a court* established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  *Id.* (emphasis added).

As indicated by the statutory language, a § 2255 motion is reserved for federal prisoners who are in custody under a sentence imposed by a federal court and who are seeking to challenge that sentence.  *See Thomas v. United States*, 572 F.3d 1300,

10

1303 (11th Cir. 2009).  In *Maleng v. Cook*, the Supreme Court considered whether a § 2254 habeas petitioner was "in custody" when his sentence had fully expired, but he nevertheless faced the possibility that the conviction could be used to enhance any sentence for subsequent crimes of which he might be convicted.  490 U.S. 488, 492 (1989).  The Court began its analysis by stating that it is "not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus."  *Id.* at 491.  The Court then cautioned that it "ha[s] never held, however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed."  *Id.*

Nevertheless, the Court in *Maleng* drew the distinction between the collateral and direct consequences of a conviction.  "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it."  *Id.* at 492.  The Court then concluded that the petitioner could not challenge his earliest conviction, which had fully expired nearly a decade before his habeas petition, on the ground that it could be (and ultimately was) used to enhance his sentence on later convictions.  *Id.* at 492-94.  Although a motion under § 2255 is not a habeas proceeding, *see, e.g., Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351 n.1 (11th Cir. 2008) (noting that "[i]t is well-settled that a § 2255

11

motion to vacate is a separate and distinct remedy from habeas corpus proper")
(citations omitted), courts have applied the habeas custody analysis of *Maleng* to §
2255 motions "where the sentence imposed for that conviction has expired." *United
States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (citing *Custis v. United States*,
511 U.S. 485, 497 (1994)); *see also Kandiel v. United States*, 964 F.2d 794, 796 (8th
Cir. 1992); *see also* Larry W. Yackle, *Postconviction Remedies* § 4:17 (1981 & 2010
Supp.) ("[F]rom the outset it has been settled that the historical and analytical tie
between [§] 2255 motions and habeas corpus petitions is paramount and that the
'custody' requirement in [§] 2255 cases is coextensive with that developed in habeas
corpus.") (citing *Heflin v. United States*, 358 U.S. 415, 420-21 (1959) (Stewart. J.,
concurring) and *Kravitz v. Pennsylvania*, 546 F.2d 1100, 1102 (3d Cir. 1977)).

As stated above, Ms. Rodriguez was released from prison in 1989 and was
ordered deported in 1992 by an immigration judge of the Executive Office for
Immigration Review.  Currently, Ms. Rodriguez is under an Order of Supervision
(Doc. # 27, Ex. A, at 4), which requires her, among other conditions, to report yearly,
or upon request, to Immigration and Customs Enforcement ("ICE").  The Order
forbids her from traveling outside Florida without permission, and requires her to
notify ICE within forty-eight hours of any change of residence or employment.

Ms. Rodriguez's sentence "fully expired" long ago.  Therefore, she can be "in

custody" for purposes of § 2255 only if she still suffers a direct – and not merely a collateral – consequence of the 1985 guilty plea and sentence. *See Maleng*, 490 U.S. at 492.  In *Padilla*, the Supreme Court expressly refused to categorize an order of deportation as a direct or collateral consequence in the context of evaluating a *Strickland* claim for ineffective assistance of counsel: "Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence."  130 S. Ct. at 1482; *see also Strickland v. Washington*, 466 U.S. 668 (1984).  The Court further elaborated on this point, stating that "[t]he collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Padilla*, 130 S. Ct. At 1482.  Finding it "'most difficult' to divorce the penalty from the conviction in the deportation context[,]" the Court "conclude[d] that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.*  The implication of this sentence, and of the holding generally, is that the Court viewed deportation consequences as, at least, *more* of a direct consequence than a collateral one, especially in light of the fact that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.*

Thus, the court is confronted with quarrelsome Supreme Court authority.  As

*Maleng* emphasized, the Supreme Court has never found custody after a sentence has fully expired.  Nevertheless, language from the *Padilla* opinion seems to support the conclusion that a deportation order can be characterized as a direct consequence of a conviction, thus sufficient to establish custody.  Faced with what seems to be a presently unanswerable question, the court will assume, as Ms. Rodriguez argues (Doc. # 27), that she is in custody and that § 2255 relief is available to her.

### 2.    *Timeliness*

Having cleared the custody hurdle, Ms. Rodriguez must bring her claim in a timely fashion.  28 U.S.C. § 2255(f) sets a one-year statute of limitations on petitions filed thereunder.  Section 2255(f)(3) states that "[t]he limitation shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]"  § 2255(f)(3).  Ms. Rodriguez argues that a criminal defendant's right to be informed whether her plea carries a risk of deportation was "newly recognized" in the Supreme Court's recent decision in *Padilla* and has retroactive application to her case.  (Pet'r.'s Suppl. Br. 3-9 (Doc. # 22).)

For purposes of § 2255(f)(3), the courts that have addressed the issue are split

14

on whether *Padilla* creates a "new rule."[8]  Assuming for Ms. Rodriguez's benefit[9] that the *Padilla* decision in fact announced a "new rule," Ms. Rodriguez must show that the right announced in *Padilla* was "made retroactively applicable to cases on collateral review[.]"  § 2255(f)(3); *see also Dodd v. United States*, 365 F.3d 1273, 1278 (11th Cir. 2004) (noting that "every circuit to consider [the] issue has held that a court other than the Supreme Court can make the retroactivity decision for purposes

---

[8] *Compare United States v. Laguna*, No. 10cr342, 2011 WL 1357538, at *4 (N.D. Ill. Apr. 11, 2011) (holding that *Padilla* does announce a "new rule"); *Dennis v. United States*, No. 3:08cr889, 2011 WL 1480398, at *4 (D.S.C. Apr. 19, 2011) (published) (new rule); *Mendoza v. United States*, No. 1:01cr214, 2011 WL 1226475, at *5 (E.D. Va. Mar. 24, 2011) (published) (new rule); *Banos v. United States*, No. 1023314cv, 2011 WL 835789, at *2 (S.D. Fla. Mar. 4, 2011) (noting that Government and petitioner agreed that *Padilla* announced a new rule); *Doan v. United States*, 760 F. Supp. 2d 602, 605 (E.D. Va. 2011) (new rule); *United States v. Hough*, No. 2:02cr649, 2010 WL 5250996, at *4 (D.N.J. Dec. 17, 2010) (new rule); *United States v. Perez*, No. 8:02cr296, 2010 WL 4643033, at *2 (D. Neb. Nov. 9, 2010) (new rule); *United States v. Gilbert*, No. 2:03cr349, 2010 WL 4134286, at *3 (D.N.J. Oct. 19, 2010) (new rule) *with United States v. Orocio*, No. 10-1231, 2011 WL 2557232, at *7 (3d Cir. June 29, 2011) (published) (holding that *Padilla* "is an 'old rule' for *Teague* purposes and is retroactively applicable on collateral review"); *Bawaneh v. United States*, No. cv10-7805, 2011 WL 1465775, at *2 (C.D. Cal. Apr. 18, 2011) (old rule); *United States v. Diaz-Palmerin*, No. 08cr777, 2011 WL 1337326, at *4 (N.D. Ill. Apr. 5, 2011) (old rule); *United States v. Chavarria*, No. 2:10cv191, 2011 WL 1336565, at *2-3 (N.D. Ind. Apr. 7, 2011) (old rule); *Zapata-Banda v. United States*, No. CvB:10-256, 2011 WL 1113586, at *5 (S.D. Tex. Mar. 7, 2011) (old rule); *United States v. Zhong Lin*, No. 3:07cr44, 2011 WL 197206, at *2 (W.D. Ky. Jan. 20, 2011) (old rule); *United States v. Macedo*, No. 1:03cr55, 2010 WL 5174342, at *1 (N.D. Fla. Dec. 15, 2010) (old rule); *United States v. Shafeek*, No. Cv10-12670, 2010 WL 3789747, at *3 (E.D. Mich. Sept. 22, 2010) (suggesting old rule); *Martin v. United States*, No. 09cv1387, 2010 WL 3463949, at *3 (C.D. Ill. Aug. 25, 2010) (likely old rule); *United States v. Chaidez*, 730 F. Supp. 2d 896, 902 (N.D. Ill. 2010) (old rule).

[9] If the *Padilla* decision merely stated a novel application of an old rule, *i.e.* an extension of *Strickland v. Washington*'s right to effective assistance of counsel, then, as an old rule, it applies retroactively to cases on collateral review.  *See Orocio*, 2011 WL 2557232, at *7. However, in such a case, § 2255(f)(3)'s limitations period would not apply, and Ms. Rodriguez's § 2255 petition clearly would be time-barred.

of [§ 2255(f)(3)]" and then also holding likewise).[10]   Nonretroactivity is the default for new rules in cases on collateral review.  *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007) ("[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.").  Freely allowing new rules to be applied retroactively would be akin to plotting legal frameworks on fault lines, with the inevitable earthquake disturbing the finality of convictions and swallowing the federal courts with collateral attacks any time a new rule is announced.

New rules apply retroactively to cases on collateral review in two limited circumstances:  (1) the new rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe[;]'" *Teague v. Lane*, 489 U.S. 288, 311 (1989) (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971)), or (2) the new rule "requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.'"  *Id.* (quoting *Mackey*, 401 U.S. at 693).

Only the second retroactivity exception is at issue in this case and is reserved for "'watershed rules of criminal procedure' implicating the fundamental fairness and

---

[10]  In the context of "a second or successive § 2255 motion or § 2254 petition, the Supreme Court itself must make the rule retroactive."  *In re Anderson*, 396 F.3d 1336, 1339 (11th Cir. 2005) (citing *Tyler v. Cain*, 533 U.S. 656, 662-63 (2001)).

accuracy of the criminal proceeding.'" *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague*, 489 U.S. at 311). "[N]either the Eleventh Circuit nor any Court of Appeals ha[s] found that *Padilla* [both announces a new rule and] applies retroactively." *Gonzalez v. United States*, No. 5:11cv197, 2011 WL 1811655, at *2 (M.D. Fla. May 12, 2011).[11] In *dicta* found in an unpublished decision, the Fourth Circuit ruminated that "nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review." *United States v. Hernandez-Monreal*, 404 F. App'x 714, 715 n.* (4th Cir. 2010).[12] Moreover, of the dozens of district courts to have considered this issue, the overwhelming majority (and all within the Eleventh Circuit) have found or hypothesized that the *Padilla* rule (if it is indeed a "new rule") is not a "'watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Saffle*, 494 U.S. at 495 (quoting *Teague*, 489 U.S. at 311); *see also Doan*, 760 F. Supp. 2d at 606 ("'However laudable' a rule requiring that noncitizen defendants be informed of the immigration consequences of plea bargains might be, such a rule 'has none of the primacy and

---

[11] Ms. Rodriguez filed a Notice of Supplemental Authority (Doc. # 28) to apprise the court of the Third Circuit's published opinion in *Orocio*. Although the Third Circuit holds that *Padilla* is retroactively applicable, it also holds that *Padilla* is merely a formal recognition of an "old rule." *Orocio*, 2011 WL 2557232, at *7.

[12] The Fourth Circuit did not qualify that rumination in the context of a "new rule" or "old rule" discussion.

centrality of the rule adopted in *Gideon*.'") (quoting *Beard v. Banks*, 542 U.S. 406, 420 (2004));[13] *Gonzalez*, 2011 WL 1811655, at *2 (suggesting, but not deciding, that *Padilla* rule is not retroactive); *Banos*, 2011 WL 835789, at *2 (same); *Gilbert*, 2010 WL 4134286, at *3 (finding that *Padilla* does not apply retroactively).

As has been noted, the only guide offered by the Supreme Court on just what constitutes a "watershed rule" is the *Gideon* decision. *See Beard*, 542 U.S. at 418; *see also Hamad v. United States*, Nos. 10cv5829, 11cv550, 2011 WL 1626530, at *2 (E.D.N.Y. Apr. 28, 2011) (recognizing that "the only [new] rule ever specifically determined by the Supreme Court to be retroactive was [*Gideon*]"). The *Gideon* decision – which recognized a Fourteenth and Sixth Amendment fundamental right to counsel in state criminal proceedings for indigent defendants – ushered in a systemic change to the country's criminal process. Although the *Padilla* decision is by no means insignificant, it has not systemically altered our criminal justice system as *Gideon* did.[14]  And whether old or new, there is no judicial dispute that the rule in *Padilla* is but a specie of the larger *Strickland* analysis of whether a defendant was

---

[13]  The Supreme Court in *Beard* stated that "[i]n providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon v. Wainright*, 372 U.S. 335 (1963) (right to counsel), *and only to this rule*."  542 U.S. at 418 (emphasis added).

[14]  Perhaps the level of disagreement among the district courts over whether *Padilla* even announces a new rule, *see supra*, note 8, is predictive of the outcome on the *Teague* retroactivity inquiry.

deprived of his or her Sixth Amendment right to effective assistance of counsel.

If *Strickland*'s recognition of the Sixth Amendment right to effective assistance of counsel did not qualify for *Teague*'s second exception to nonretroactivity,[15] there can be no legitimate argument that *Padilla*, merely an application of *Strickland*, does. The *Padilla* rule, even if new, is not retroactive to cases on collateral review. The motion to vacate pursuant § 2255 fails for untimeliness.

**B.   *Coram Nobis* and *Audita Querela* Petitions**

In view of the disposition of her § 2255 petition, *coram nobis* and/or *audita querela* relief is unavailable to Ms. Rodriguez.  A writ of error *coram nobis* or *audita querela* is appropriate only if § 2255 relief is unavailable or inadequate.  *See Brown*, 117 F.3d at 474-75 ("If Brown was 'in custody' within the meaning of § 2255 when he filed his appeal, then the statutory remedies of that provision were available to him, and coram nobis relief was unavailable as a matter of law."); *see also United States v. Payne*, No. 10-5111, 2011 WL 1760423, at *1 (10th Cir. May 10, 2011) (published) (citing *Santos-Sanchez v. United States*, 548 F.3d 327, 331 (5th Cir. 2008) ("[A writ of *coram nobis*] will issue only when no other remedy is available . . . ." (internal quotation marks omitted)), *vacated on other grounds*, 130

---

[15]   In *Beard*, the Supreme Court had the opportunity to add *Strickland* to its list of rules that fit within the second *Teague* exception.  The Supreme Court declined to do so, instead referring only to *Gideon*.  *Beard*, 542 U.S. at 418.

S. Ct. 2340 (2010)); *see also United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005) (holding that the common law "writ of *audita querela* may not be granted when relief is cognizable under § 2255").

Although the court will not address the merits of Ms. Rodriguez's § 2255 petition, this does not mean that § 2255 is unavailable. No less than three courts of appeals have held that the timeliness of a § 2255 petition "is irrelevant" for determining whether § 2255 relief is available. *Payne*, 2011 WL 1760423, at *2; *see also Matus-Leva v. United States*, 287 F.3d 758, 760-61 (9th Cir. 2002) (holding that § 2255 relief is not unavailable simply because it is time-barred); *Barreto-Barreto v. United States*, 551 F.3d 95, 103 (1st Cir. 2008) (holding that petitioners "may not now resort to coram nobis relief to avoid § 2255's deadlines.").

Because the court assumed, at Ms. Rodriguez's urging, that she was "in custody" for purposes of § 2255, *coram nobis* and/or *audita querela* relief is unavailable, and Ms. Rodriguez's petition for a writ of error *coram nobis* and/or *audita querela* is due to be denied.

## C.   <u>Summary</u>

In summary, § 2255 relief is available. Thus, *coram nobis* and/or *audita querela* relief is unavailable. But Ms. Rodriguez's § 2255 motion is untimely. And notwithstanding the untimeliness, based on the motion and the record, there is not the

slightest indication that an evidentiary hearing would reveal anything that suggests that Mr. Moreno's representation fell below the standard now required by *Strickland* and *Padilla*. Having said this, the court is troubled by the district court's *alleged* treatment of her motion for a JRAD. However, a properly filed motion hastily denied does not by itself give rise to a claim for ineffective assistance of counsel.

Even if *coram nobis* and/or *audita querela* relief were available, Ms. Rodriguez must "present sound reasons for failing to seek relief earlier." *Mills*, 221 F.3d at 1204 (citing *Morgan*, 346 U.S. at 512). Ms. Rodriguez's argument that her *coram nobis* and/or *audita querela* petition is timely because it was filed within one year of *Padilla* is unavailing. (Pet'r's Br. 9.) The Ninth Circuit has held that a "recent and fully retroactive change in the law" is a "valid reason[ ]" for failing to seek relief earlier in considering the timeliness of a *coram nobis* petition. *United States v. Montalvo*, No. 92-15668, 995 F.2d 234 (9th Cir. 1993) (unpublished table decision) (citing *United States v. Walgren*, 885 F.2d 1417, 1420-21 (9th Cir. 1989)). However, as discussed above, the *Padilla* decision, if an "old rule," is not a change in the law; and if a "new rule," it is not fully retroactive to cases on collateral review. *Id.* Thus,

even if *coram nobis* and/or *audita querela* relief were available, the petitions would be untimely.[16]

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED that Ms. Rodriguez's § 2255 motion is DISMISSED pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings and that her petition for a writ of error *coram nobis* and/or *audita querela* relief is DENIED.  An appropriate judgment will be entered.

DONE this 4th day of August, 2011.

/s/ W.  Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

---

[16]  In fact, the strong authority that *Padilla* is not a new rule, including the Third Circuit's recent decision in *Orocio*, and the authorities cited therein, should have put litigants on notice of potential claims long before *Padilla* was handed down.

22